[Civ. No. 703.    Third Appellate District.—June 29, 1910.]

## NORTHWESTERN REDWOOD COMPANY, a Corporation, Appellant, v. J. D. DICKEN, Respondent.

APPEAL FROM NEW TRIAL ORDER—"STATEMENT OF CASE"—"BILL OF EXCEPTIONS"—SPECIFICATIONS—REVIEW.—Where the notice of motion for a new trial specified that it would be made upon a "statement of the case," and the trial judge designated it in his settlement as a "bill of exceptions," it may be treated either as a statement or a bill of exceptions, and it is sufficient that, in either case, the specifications of the errors occurring at the trial and excepted to, for which a reversal of the order denying the new trial is asked, are sufficiently pointed out to have enabled the trial court properly to consider them, and to enable this court to review them without difficulty or inconvenience.

ACTION FOR GOODS SOLD—CREDITS OF LUMBER—SALE OF LUMBER BUSINESS — OPTION — EXECUTORY CONTRACT — PAROL EVIDENCE — INADMISSIBLE HEARSAY.—In an action for a balance of goods sold for supplies to defendant as a lumber manufacturer, whose lumber was delivered to plaintiff and credited on the account, in which it appears that subsequently defendant, in consideration of ten dollars paid by

13 Cal. App.—44

one Roach, and further payments to be made by him, signed a unilateral contract to sell to him all of his timber and mill business, whether such contract was an option as testified by Roach, or an executory contract of sale as claimed by defendant, and conceding that the contract was so ambiguous as to justify parol evidence to explain it, yet it was prejudicially erroneous to admit hearsay declarations of Roach made after the execution of the contract, and not made in the presence of either party, that he had bought the timber and mill property and was the owner thereof.

ID.—SUPPOSITION OF EXECUTORY CONTRACT—OPERATION OF MILL.—If the transaction amounted to an executory contract of sale of the mill and timber on defendant's land, with the right to operate the mill pending final sale, Roach alone would be responsible for all supplies received while he operated the mill, and would be entitled to all credits for lumber delivered by him to plaintiff during such operation.

ID.—SUPPOSITION OF OPTION—AGENCY FOR OWNER.—If the transaction was an option on the part of defendant to sell to Roach, and the latter assumed control and management of the property for defendant, then, in the absence of any other agreement to the contrary, defendant continued to be responsible for all supplies furnished to the mill, necessary for its operation, and was entitled to credits of all timber delivered to plaintiff by Roach during the period in which he operated the mill as agent for defendant.

ID.—DECLARATIONS BY ONE NOT A PARTY ADMISSIBLE ONLY FOR IMPEACHMENT.—Declarations made by Roach, who was not a party to the action, and not made in the presence of either party, after the consummation of the transaction, that he had bought the mill and lumber business, constituted the plainest kind of hearsay testimony, and could prove admissible under no conceivable theory, except, after proper foundation laid, for the purpose of impeaching Roach as a witness. Proof of such declarations could not constitute affirmative or independent evidence contradictory to the testimony of Roach.

ID.—DECLARATIONS NOT PART OF RES GESTAE.—The declarations were not admissible as part of the *res gestae,* after the execution of the contract, whether it be regarded as an option upon consideration conferring a right, or an executory contract of purchase and sale. The fact that a final transfer of the property had not taken place when the declarations were made would not extend the agreement to sell and buy, so as to make the declarations admissible as part of the *res gestae.*

ID.—GENERAL RULE AS TO RES GESTAE.—Where the intention of the parties to a written contract is rendered obscure by the ambiguity of the language in which its terms are expressed, evidence of the declarations of the parties to the contract, or either of them, made

contemporaneously with the negotiation and executions of the agreement, if explanatory of the purpose and intent of the same, would be admissible as part of the transaction, or *res gestae.*

ID.—NARRATIVE OF PAST EVENT NOT BINDING—HEARSAY.—Declarations made by one of the parties to the contract, not made in the presence of either of the parties to the action, but made after the transaction evidenced by the contract had been fully completed, are a mere narrative of a past event, and would constitute mere hearsay testimony, which would be inadmissible in an action between other parties; and by no known rule of law are declarations thus made binding upon a stranger to the transaction.

ID.—NARRATIVE DECLARATIONS NOT ADMISSIBLE UNDER CODE PROVISIONS.—Such narrative declarations of one not a party to the action are not admissible, as *"prima facie* evidence," within section 1851 of the Code of Civil Procedure, or as "part of an act, declaration, conversation or writing which had been given in evidence," within section 1854 thereof, nor as a declaration "against interest," within the purview of any section of that code.

ID.—INSTRUMENT PRIMA FACIE A MERE OPTION—PREJUDICIAL CHARACTER OF DECLARATIONS BEYOND DOUBT.—The instrument which is the main subject of this controversy, is held to appear from its language to be nothing more than a mere option, involving only the bestowal of the right to accept or reject within a certain time the offer therein contained to buy the property mentioned at the price named, and that it could not appear otherwise without parol evidence. The court recognized this necessity to overcome the legal effect of the transaction as shown by the writing; and was, beyond doubt, prejudicially influenced to a great extent by the improperly admitted declarations made by the holder of the option, not a party to the action, after the transaction was consummated, in construing its language as an executory contract of sale, instead of an option.

ID.—IMPROPERLY ADMITTED EVIDENCE PREJUDICIAL.—Even if some of the language in the instrument would lend color to the construction given by the trial court, the improperly admitted evidence of such declarations must nevertheless be held prejudicial. If improper evidence has been admitted, it is sufficient to require a reversal that it may have turned the scale and lost the case to appellants. This must of necessity be the rule wherever evidence has been admitted which tends in any degree to affect the final conclusion of the court.

APPEAL from an order of the Superior Court of Mendocino County denying a new trial.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

J. E. Pemberton, and Thomas & Thomas, for Appellant.

Robert Duncan, for Respondent.

HART, J.—This is an action by the plaintiff to recover from defendant the sum of $664.79, alleged to be a balance due on an account.

The case was tried by the court, without a jury, and the defendant given judgment.

A new trial was denied to the plaintiff, and this appeal is from the order disallowing the motion therefor.

Respondent makes a preliminary objection to the consideration of the record here, claiming that the record of the proceedings contained in the transcript is neither a statement of the case nor a bill of exceptions. The notice of motion for a new trial states that said motion "will be made upon affidavits and upon a statement of the case," and counsel for respondent declares that, inasmuch as the document intended as a statement or a bill of exceptions is thereafter at all times referred to by counsel for the appellant and the judge in his certificate as a "bill of exceptions," we must accept such characterization of the document as conclusive of its character, and treat it as a bill of exceptions and not a statement. But it is further insisted that, even if it may be said to be a statement, it must be disregarded, since it does not contain, as required by section 659 of the Code of Civil Procedure, specifications of the particular errors occurring at the trial and excepted to by the appellant referred to in the notice of motion.

While the record of the proceedings in the court below as set forth in the transcript was settled by the judge as a "bill of exceptions," we think that it may be treated as either a statement or a bill of exceptions, and that in either case the principal, if not, in fact, the only, errors of law occurring at the trial and excepted to for which a reversal of the order is asked, are sufficiently pointed out in the "specification of errors" to have enabled the trial court to properly consider them, and to enable this court to review them without difficulty or inconvenience. These errors are thus specified in the statement or bill: "1. The court erred in each and every time in which evidence was admitted over plaintiff's objections of statements made by L. J. Roach not in the presence or

hearing of plaintiff or any of its officials or agents, to the admission of which evidence plaintiff duly excepted.''

Then follows a general or an omnibus specification assigning as error all the other rulings of the court against the objections of appellant. The first specification, however, was, as stated, sufficiently direct and definite to indicate the errors upon which appellant relied for a new trial, and demands a reversal of the order denying it, and we shall therefore proceed to review the record as to the errors thus pointed out.

The plaintiff is a corporation, organized in pursuance of the laws of this state, and engaged, among other things, in the general merchandising business, at Willits, in Mendocino county. The defendant had, for a number of years prior to July 6, 1907, prosecuted the business of cutting and manufacturing lumber on a body of timber land, consisting of eighteen hundred acres, situated on Cave creek, in said county. During all said time the plaintiff furnished defendant with supplies necessary for his domestic use, and for the purposes of his lumber-mills, and the latter, it seems, was accustomed to shipping and delivering to plaintiff, from time to time, or as it was manufactured, the lumber from his mill. The plaintiff would, upon the receipt of the lumber, credit the defendant upon its books for the lumber so delivered and received at the current market prices.

On the sixth day of July, 1907, the defendant, having previously entered into negotiations with one L. J. Roach, for the sale of his lumber-mill and the timber growing on the land mentioned, executed the following agreement with said Roach, said agreement being, upon its face, as will be observed, unilateral:

"Willits, Cal., July 6, 1907.

''For and in consideration of the sum of Ten Dollars, receipt whereof is hereby acknowledged, I hereby agree to sell to L. J. Roach all my timber on 1800 acres, more or less, situated on Cave Creek in Mendocino County, for Seventy-five cents per M ft. as determined by a disinterested competent timber cruiser, or Two Thousand Dollars cash, at option of Roach, and to allow said Roach Fifteen years from date of final consummation of sale to remove said timber, said Roach to be allowed mill sites and all necessary rights of way on any portion said lands for twenty years from date of sale, same

to be incorporated in formal instrument of transfer to be drawn by parties hereto. I also agree to sell to L. J. Roach all my mill property and appurtenances of every description, including saw mill, machinery, logging tools, skid-ways, four horses, ten oxen, harnesses, yokes, four wagons, two trucks, rigging, cooking utensils, etc., all for $4,400 to be incorporated in inventory to be taken by parties hereto. I agree to furnish complete abstract of title to said land and to allow 30 days from date of delivery to said Roach to examine same, and to allow ten days from acceptance by said Roach to complete sale after all necessary legal requirements shall have been complied with.

"Said Roach to take immediate possession of said premises and conduct operations for me until final sale or rejection of title.

"J. D. DICKEN."

The sum of ten dollars was paid to Dicken by Roach upon the execution of said instrument.

On the seventh day of July, 1907, in pursuance of the foregoing agreement, said Roach took possession and control of the mill and lumber manufacturing business referred to therein. The plaintiff continued to furnish supplies to the mill, but charged the same on its books to the defendant, and Roach delivered to the plaintiff, as defendant had always done, the lumber manufactured at the mill. The lumber so delivered was credited by plaintiff on the account of defendant.

Roach operated the business for a little over a month, when he abandoned it.

It may here be stated that "it was stipulated and agreed by the parties in open court that the account sued on and an itemized bill for which was then on file among the papers in the case was correct, so far as the particular items thereof were concerned; that the goods to the amount of $800 had been sold and delivered to someone at the 'Dicken Mill' mentioned in the evidence; but it was not admitted that defendant was liable therefor."

It was further admitted that "the controversy was in part whether said goods were sold to defendant through one L. J. Roach, as his agent, or to said L. J. Roach on his own account."

The claim of the defendant against the complaint is that he agreed to sell, and Roach agreed to buy, the mill and the timber on his land on the sixth day of July, 1907, and that the instrument above quoted was intended as evidence of a contract of sale. The plaintiff and Roach insist that the quoted instrument was intended as evidencing an option only, and that Roach took possession of the property, not as a purchaser, but to manage the same for Dicken until he (Roach) should determine whether he would buy the property or not.

It appears that the written instrument or agreement on the part of Dicken quoted above had been altered in a material respect either before or after the time at which it was signed by Dicken. The document was prepared by one E. A. Selfridge, Jr., president of plaintiff corporation. As so prepared originally the last sentence of the writing read as follows: "Said Roach to take immediate possession of said premises and conduct operations *from date* until final sale or rejection of title." Selfridge and Roach testified that, when Dicken was about to sign the instrument, Roach objected to the words "from date" contained in said last sentence, saying to Selfridge, in the presence of Dicken, that "he would not go out there with the possibility of the option being rejected, the sale not going through." Selfridge then said, "Very well; we will change 'from date' and say 'for me.'" The alteration thus suggested was then made, and, according to the testimony of Selfridge and Roach, with the consent of both Dicken and Roach, and as so altered the agreement or writing was signed by Dicken.

Dicken flatly contradicted Selfridge and Roach on this point, and emphatically declared that the alteration was made after he had signed the instrument and without his knowledge and consent.

The court found with and in favor of Dicken as to the alteration, and held the transaction resulting in the writing to have constituted a contract for the sale of the property to Roach.

It appears from testimony offered and received on behalf of plaintiff that at the time of the alleged sale of the property to Roach, Dicken was indebted to plaintiff for supplies in a large sum of money, and that Roach, while running the mill, delivered lumber to plaintiff of much greater value than the

supplies and cash furnished Roach by plaintiff during the period of time he was operating the business. As stated, the lumber delivered to plaintiff by Roach was credited to the account of Dicken, so that the excess in the value of the lumber delivered by Roach over the supplies and cash received by him from plaintiff obviously contributed materially toward the reduction of the latter's account against Dicken. As seen, according to the complaint, the sum to which plaintiff's claim against Dicken was thus and otherwise reduced amounted to $664.79, to recover which this action was instituted.

From what has thus far been seen of this controversy, as it is presented by the pleadings and the evidence, the vital point hinges upon the legal nature and effect of the transaction between Dicken and Roach as evidenced by the writing executed by Dicken on July 6, 1907, and quoted in this opinion.

If the transaction amounted to the making of an executory contract of sale of the mill and the timber on defendant's land, then, manifestly, Roach was alone responsible for all obligations incurred while he operated the mill, and was entitled to all credits for lumber delivered by him to plaintiff during the same period or term. If, on the other hand, the transaction involved only an option on the part of Dicken to sell to Roach, and the latter assumed control and management of the property for Dicken, then, it is equally manifest that, in the absence of any other agreement to the contrary, Dicken continued to be responsible for all supplies furnished the mill necessary in the operation thereof, and was entitled to all credits for all lumber delivered to plaintiff by Roach during the period the latter operated the mill. In this latter case, in other words, Roach was only an agent of Dicken.

A correct construction of the transaction between Dicken and Roach is, therefore, of vital importance.

To aid it in the construction of said transaction, the trial court, over the objections of plaintiff, admitted evidence of the declarations of Roach, made to the witnesses testifying thereto, after Dicken had executed the writing and Roach had taken charge of the property, and not in the presence of either plaintiff or defendant, to the effect that he (Roach) had bought from Dicken, and was the owner of, the lumber-mill and the business connected therewith.

The rulings of the court admitting this testimony constitute the principal subject of discussion in the briefs as well as the main reason for which appellant urges that the order should be reversed.

The rulings referred to were, in our opinion, not only erroneous, but, in view of the purpose of the evidence admitted thereunder, were highly prejudicial to the plaintiff.

Roach is not a party to this action, and his declarations after the consummation of the transaction, not in the presence of the plaintiff, that he had bought the mill and lumber business from Dicken, constituted the plainest sort of hearsay testimony, and could have been admissible under no conceivable theory except, after proper foundation had been laid therefor, for the purpose of impeaching Roach.

These declarations were not properly receivable in evidence under the rule of *res gestae,* and obviously not admissible on the ground that they constituted declarations against the interest of the declarant. Nor would proof of such declarations constitute proper substantive or independent and affirmative evidence contradictory to the testimony of Roach. Undoubtedly, where the intention of the parties to a written contract is rendered obscure by the ambiguity of the language in which its terms are expressed, evidence of declarations of the parties to said contract, or either of them, made contemporaneously with the negotiation and execution of the agreement, if explanatory of the purpose or intent of the same, would be admissible as part of the transaction or *res gestae.* But it is very clear that such declarations made by either of the parties, not in the presence of the parties to the action, after the transaction has been fully completed, in an action between one of the parties to the transaction and a third party, would involve a narrative of a past event, and, therefore, constitute hearsay testimony pure and simple. By no known rule of law are declarations thus made binding upon a stranger to the transaction.

But counsel for respondent advances the theory that, at the time the alleged declarations were made, "the transaction was not completed, and would not have been completed until the final transfer of title by Dicken to Roach." In this counsel is mistaken. The question to be determined by the court as to the transaction between Dicken and Roach was: What

were the legal relations established between them by the instrument whose terms were sought to be explained in part by the declarations of Roach after the execution of said instrument? Whatever was intended to be accomplished by the transaction evidenced by the writing—whether an agreement to sell and buy the property involved or only an option to buy the same—was completed by the execution by Dicken of said writing. The point at issue as to this transaction was whether an executory contract of sale had thus been effected or only an offer to sell tendered to Roach. Dicken claimed that it was an executory contract of sale. Roach contended that it was only intended as an offer or an option, and, as stated, the question was as to the legal effect of that transaction, which was, whatever may have been its ultimate purpose and scope, as fully completed as a transaction resulting in the actual sale of property could be. In other words, a contract involving an option to buy property is as fully a completed contract, to the extent of the only purpose intended to be accomplished thereby, as is a contract of sale or a contract for any other purpose. The gist of a contract of option is the *right* given thereby to accept or reject an offer to sell within a stipulated or reasonable time. If, therefore, as Roach testified, the transaction evidenced by the writing amounted to an option only, then it was completed as such upon the execution of the instrument by Dicken. If, on the other hand, it was intended as, and in fact constituted, an executory agreement to sell, as the trial court found the transaction to be, then the transaction itself was completed, even though there was something remaining to be done to fully consummate the effect of said transaction. In other words, accepting the defendant's construction of the transaction, the execution or completion of the *agreement* on his part *to sell* and on Roach's part *to buy* the property was a completion of that transaction, and the fact that a formal transfer of the property had not taken place at the time the declarations were made by Roach would not extend the "transaction" culminating in the *agreement to sell and buy* so as to make said declarations admissible under the rule of *res gestae.*

The case of *Lewis* v. *Burns,* 106 Cal. 381, [39 Pac. 778], cited by respondent, was where the declarations of one De Blainville, deceased at the time of the trial, were allowed in

evidence for the purpose of showing the character of a transaction by which certain real property was conveyed by the declarant to the wife of the plaintiff.   De Blainville, by whom the plaintiff and his wife were employed, retained their wages, and, during the period of said employment, acted as their friend and adviser, and also acted for them in the investment of their earnings.   The deeds to the property so bought by De Blainville for plaintiff and his wife were, by the advice of De Blainville, taken in the wife's name.   The plaintiff was then a man of dissipated habits, and it was perhaps on this account that De Blainville suggested that the deeds be taken in the name of his wife.   However, the wife, before her death, conveyed the property to her brother and sister, reserving to herself during life the rents, issues and profits thereof.   Upon her death, her husband brought an action to quiet title to said property, and the question submitted for trial was whether the property was a gift from De Blainville to the wife, ''or whether in purchasing said property De Blainville acted as the agent of the plaintiff and his wife and as their adviser,'' and the property so purchased constituted community property because of having been purchased with community funds.   The supreme court held that ''the declarations of De Blainville as to his intentions in the premises, *made at the time he purchased the lots and constructed the houses upon them* illustrative of his intent, formed a part of the *res gestae,* and were admissible in evidence.''

In other words, the declarations of De Blainville constituted a part of the very transaction on which the cause of action in that case rested.   They were not, as here, made *after* the completion of the transaction.

The case of *Bates* v. *Ableman,* 13 Wis. (644) 721, also cited by respondent in connection with the attempted application of the rule of *res gestae* to the declarations of Roach, afford no support to his position.   This case, as we read it, is against him.   There the validity of an assignment by a party for the benefit of his creditors was the question in controversy.   The trial court refused to allow a witness to testify to declarations made by the assignor in insolvency after the assignment as to his intention in making it.   The Wisconsin court, speaking of this ruling, said: ''We think it [the testimony] was properly excluded.   The statements of Seymour were not those of

a party to the suit, and were not admissible on that ground. They were not admissions of a vendor with respect to his title, made before he had parted with it. They were no part of the *res gestae.* We can therefore see no principle of evidence upon which they could be admitted. It is undoubtedly true that, where the intent of a party to a sale is in issue, his statements *at the time, and so connected with the transaction as to be a part of the res gestae,* are competent evidence to show such intent, even though the person is not a party to the suit. But where *they are not so connected with the transaction,* but are offered as mere *admissions after it occurred, he not being a party to the suit,* they are no more competent for that purpose than they would be to prove any other material fact. They are then mere hearsay. And, although a person may be presumed to know very well what his intention was, yet that fact does not make his mere statements, not under oath, proper evidence to prove it, any more than any other material fact, equally well known to a witness, could be proved in the same way." We think the foregoing language very clearly expresses the situation here.

The very recent case, *In the Matter of the Estate of Henry Gird, Deceased,* 157 Cal. 534, [108 Pac. 499], was where the question whether the decedent was the father of the distributees of the estate of the deceased was the vital issue. A futile attempt was made to prove certain declarations alleged to have been made by the mother of said distributees to a doctor, some months prior to the birth of one of the children, "to the effect that she was 'in the family way' by one Smith, and that she desired to be rid of the child by an operation." Upholding the ruling of the trial court excluding said declarations, the court says: "This proposed evidence was properly excluded by the trial court. Alice was not a party to this proceeding, but only a witness on behalf of her children. Evidence of these declarations by her to the physician would have been pure hearsay, in no way binding on her children as evidence on the question of paternity. Being contrary to her evidence given on that question, the declarations, waiving other objections thereto, would have been admissible by way of impeachment of Alice as a witness, but a complete answer to appellants' claim in this regard is that no foundation was laid for any such impeachment on the examination of Alice."

There is, as we have declared, no express rule of evidence or principle of law which would authorize the proof of these declarations for any other purpose than as a matter of impeachment, except, of course, in those cases where the declarant is a party to the action.   In addition to section 1850 of the Code of Civil Procedure, counsel for respondent refers to sections 1851 and 1854, of the same code, as authorizing this evidence.   The sections so cited, as well as section 1870 of said code, specifically point out the kinds of declarations that are competent to be proved and the conditions upon which they may be given in evidence.   The declarations here do not come within any of the sections mentioned.   They were, in other words, neither admissible as "against interest," within the purview of any section of the code authorizing proof of extrajudicial declarations, nor as "*prima facie* evidence between the parties" to this action, within the meaning of section 1851 of the Code of Civil Procedure, nor as "a part of an act, declaration, conversation or writing" which had been given in evidence, within the contemplation of section 1854 of said code.

That the effect of the rulings of the trial court admitting these declarations was to greatly prejudice the rights of plaintiff in the action  cannot for a moment be doubted.   The instrument which is the main subject of this controversy appears, from its language, to be nothing more than a mere option, or as involving only the bestowal upon Roach by Dicken of the right to accept or reject, within a certain time, the offer therein contained to buy the property mentioned at the price named.   It is plainly apparent, therefore, that, in order to show that the transaction resulting in the execution of the instrument by Dicken constituted an executory contract of sale, parol testimony was absolutely necessary to be received.   In fact, the rulings of the court admitting testimony *aliunde* the instrument itself for the ascertainment of its intent conclusively show that the court was in doubt as to the legal effect of the transaction as evidenced by the writing, for it may safely be assumed that, if the language of the instrument itself had been reasonably clear in the expression of the intent of the parties to the transaction, the court would have neither required nor allowed parol testimony to be introduced upon the subject, since, under such circumstances,

testimony independent of the writing itself would not have been necessary to aid the court in the construction of the instrument. Clearly, then, the court, in forming its conclusion as to the nature in legal effect of the relations established between Dicken and Roach by the transaction, must have been influenced to a very great extent by the evidence of the declarations of Roach, not a party to the action, made after the completion of said transaction.

Of course, if, as we have in effect before observed, some *competent* evidence had been received showing that the transaction was of the nature claimed for it by respondent, a reviewing court would not perhaps feel justified in disturbing a finding based upon such testimony. But the situation here is that the court's general findings (there is no specific finding upon the point under consideration), which necessarily embrace a finding that the transaction between Dicken and Roach amounted to an executory contract of sale, must rest, if at all, solely upon a construction of a writing whose language is apparently opposed to such construction.

But even if it could be said that there is *some* language in the instrument which lends some color to the construction which the court has given it, the evidence of the declarations of Roach must, nevertheless, be held to have been prejudicial.

In *Estate of James*, 124 Cal. 653, [57 Pac. 578, 1008], it was contended "that there is sufficient evidence in the record, which came before the court without objection, to support the findings of fact, and that, therefore, even conceding the admission of evidence under objection which should have been denied admission, still a new trial for the aforesaid reasons should not be ordered." In answer to that contention, the court said: "This position cannot be sustained. If improper evidence under objection has been admitted, it is impossible for this court to say how much weight and influence it had in the mind of the trial court in framing its findings of fact. The improperly admitted evidence may have been all-powerful to that effect. As far as this court knows, it may have been that particular evidence which turned the scale and lost the case to appellants. This must of necessity be the rule wherever improper evidence has been admitted which upon its face *tends in any degree to affect the final conclusion of the court.*" (Italics ours.)

There can be no doubt, as previously suggested, that the evidence of Roach's declarations contributed in no small degree to the conclusion reached by the trial court with regard to the nature of the transaction between Dicken and Roach.

There are some other questions discussed by counsel in their briefs, but the point to which we have solely addressed our attention is conceded by counsel for the respondent to involve the pivotal proposition in the controversy, and, therefore, in view of our conclusion as to said point, others need not be noticed.

The order refusing plaintiff a new trial is reversed and the cause remanded to the court below for trial *de novo.*

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1910.